UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HARRY DAPRON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:17 CV 2671 JMB |
| ) | |
| SPIRE MISSOURI, INC., and LACLEDE ) | |
| GAS COMPANY EMPLOYEES' ) | |
| RETIREMENT PLAN, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Harry Dapron's ("Dapron") Motion for Discovery (ECF No. 16). Defendants Spire Missouri, Inc. f/k/a Laclede Gas Company ("Spire") and Laclede Gas Company Employees' Retirement Plan ("Plan") (collectively "Defendants") have filed a response in opposition and the issues are fully briefed. The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the Court grants in part and denies in part Dapron's motion for discovery.

This case arises under the Employee Income Security Act ("ERISA"), 29 U.S.C. §1001, et seq.. Dapron seeks to attempt to recover benefits under an employee retirement plan and for breach of fiduciary duty. Dapron seeks alternative relief both for the wrongful denial of disability benefits claim under ERISA § 502(a)((1)(3) (Count I) and for equitable relief for breach of fiduciary duty claim under ERISA § 502(a)(3) (Count II). Spire denied Dapron's claim for disability benefits because he did not "apply for Disability Retirement benefits in connection with [his] termination." (Complaint, ECF No. at ¶ 35)

1

In the Complaint, Dapron alleges that Defendants breached their fiduciary duty by failing "to provide the information necessary to ensure [Dapron] understood his rights despite his condition [disabling mental illness impairing his judgment]. This silence allowed [Dapron's] delusions to mislead him for years which prevented him from applying for the benefits he was owed until 2016." (Complaint, ECF No. at ¶¶ 47-48) Defendants deny that they owed a fiduciary duty to Dapron. Defendants assert an affirmative defense denying liability for breach of fiduciary duty because the Plan cannot be a fiduciary. Defendants also assert that any breach of fiduciary claim arising from events occurring in 2010 is barred by the applicable statute of limitations. Defendants further assert that Spire, as employer and as plan sponsor, did not act in a fiduciary capacity, and the Plan cannot be a fiduciary and thus Defendants cannot be liable for breach of fiduciary duty. (Defendants' Amended Joint and Separate Answer, ECF No. 20, at 10 ¶¶ 2-3)

## I. Background

Dapron alleges that beginning in 2009, he started experiencing mental health issues that impacted his ability to work and function. (Complaint, ECF No. at ¶ 8) In September 2009, Dapron was hospitalized at St. Anthony's Hospital for psychiatric treatment of acute psychosis, paranoia, hallucinations, and delusions. (Id. at ¶ 9) After being discharged on October 2, 2009, Dapron returned to work. (Id. at ¶¶ 10-11)

On February 22, 2010, Dapron was readmitted to St. Anthony's Hospital and kept under voluntary observation until discharged on February 24, 2010. (Id. at ¶ 12)

Dapron alleges that his employment was terminated on March 2, 2010.[1] (Id. at ¶ 13)

---

[1] The administrative record shows that Dapron voluntarily resigned from employment on March 2, 2010. (Adm. Rec. at 467)

On March 24, 2010, the police returned Dapron to St. Anthony's Hospital, and he was involuntarily transferred to St. Anthony's Behavioral Health Unit for treatment of his schizophrenia. (Id. at ¶ 14) On March 31, 2010, Dapron was discharged and released to an intensive outpatient program. (Id. at ¶ 15) After his discharge, Dapron became intermittently homeless and his schizophrenia went untreated. (Id. at ¶ 16)

In April, 2011, Dapron returned to St. Anthony's Hospital where he received treatment for acute psychosis and chronic schizophrenia but he returned to his intermittent homelessness. (Id. at ¶¶ 17-18)

On November 30, 2011, Dapron sought treatment at Missouri Baptist Medical Center and was diagnosed with acute psychosis and delusional disorder. (Id. at ¶ 19)

On December 21, 2011, an emergency room doctor at Barnes Hospital involuntarily committed Dapron for 96 hours with full precautions, (Id. at ¶ 21)

On March 4, 2012, Dapron filled out a social security application, alleging that he suffers from paranoia and poor social interaction and needs assistance caring for himself. (Id, at ¶ 23) The Social Security Administration determined that Dapron's mental illness left him disabled no later than February 20, 2010. (Id. at ¶ 24)

Between February 11, 2013, and July 2016, Dr. Jeffrey Pevnick treated Dapron twenty-seven times for depression and schizophrenia with delusions and auditory hallucinations. (Id. at ¶ 26)

On May 16, 2016, Dapron filed for his disability retirement benefits with Laclede Gas Company. (Id. at ¶ 28) On June 20, 2016, the Retirement Board, the plan administrator for the Plan, denied benefits because Dapron did not "apply for Disability Retirement benefits in

3

connection with [his] termination."² (Id. at ¶¶ 29, 35, Adm. Rec. at 412) The Retirement Board found that "[Dapron's] employment with Laclede Gas Company terminated on or about March 2, 2010, and [his] application for Disability Retirement benefits did not occur until on or about May 16, 2016. [Dapron] did not apply for Disability Retirement benefits in connection with [his] termination. Therefore, [his] claim for Disability Retirement benefits is hereby denied." (Adm. Rec. at 412) Thereafter, Dapron appealed the Defendants' decision to deny disability benefits, contending the decision was arbitrary and capricious. His appeal was denied. (Id. at ¶¶ 30, 42)

Dapron alleges that Defendants are fiduciaries, and they "failed to provide information necessary to ensure [Dapron] understood his rights despite his condition. This silence allowed

---

²The Employees' Retirement Plan ("Plan") of Laclede Gas Company in 2010 provided:

> 7.1 **Disability Date.** Any Participant who, at a time when he is employed in Covered Employment, has fifteen or more Years of Credited Service and has then attained age forty but not age sixty-five, and in the judgment of the Retirement Board, based on competent medical evidence, is unable by reason of any medically determinable physical or mental impairment to perform the duties required by his job, shall be deemed Totally and Permanently Disabled ("Disability") if there is no work that he is able to perform available to him within the Company.

(Adm. Rec. at 27)

The Summary Plan Description explained:

**RETIREMENT PROCEDURE**

> You must apply for retirement by submitting a written statement to the Retirement Board of your intention to retire and the date chosen; and apply at least 30 days and no more than 90 days before your intended retirement date. Employee Benefits will provide a form suitable for this if you request it. Retirement dates are limited to the first day of a month.
>
> For Disability Retirement, you must also submit competent medical evidence of total and permanent disability with your application. Totally and Permanently Disabled is defined in the Plan. If you are unable to apply for yourself, a member of your immediate family or your legal representative may make the application.

(Adm. Rec. at 118)

[Dapron's] delusions to mislead him for years which prevented him from applying for the benefits that he was owed until 2016." [3] (Id. at ¶¶ 46, 48)

## II. Motion for Discovery and Responsive Briefs Thereto

In their Joint Proposed Scheduling Plan, counsel included the following paragraph summarizing their disagreement about conducting discovery in this case:

> While Plaintiff believes he is entitled to discovery relating to the claims for equitable relief and discovery of any conflicts of interest and procedural irregularities regarding the claims for denial of benefits, Defendant believes the evidence before the Court should be limited to the administrative record, no discovery should be permitted, and the ERISA plan in this matter grants its administrator sufficient discretion to trigger the abuse of discretion standard of review. [4]

(ECF No. 11 at 1-2)

In his motion for leave to conduct discovery, Dapron seeks a Court order permitting limited discovery beyond the administrative record including: (1) procedural irregularities; (2) Defendants' conflict of interest for the (a)(1)(b) claim for benefits; and (3) Defendants' breach of fiduciary of duty.

Defendants resist the motion, arguing that the exceptions permitting discovery in ERISA cases are not applicable to this case because: (1) neither of the defendants is a fiduciary of the

---

[3] In their Joint and Separate Answer, Defendants denied they owed a fiduciary duty to Dapron by pleading that "[t]his Court should dismiss Count II as to the Plan because the Plan cannot be a fiduciary and thus cannot be liable for 'breach of fiduciary duty.' The Court should dismiss Count II as to Spire because Spire, as employer and as plan sponsor, did not act in a fiduciary capacity and thus cannot be liable for 'breach of fiduciary duty.'" (ECF No. 5 at ¶¶ 2-3)

[4] Dapron's breach of fiduciary claim, although alleged pursuant to ERISA statutes and in conjunction with a denial-of-benefits claim, is subject to a separate and distinct standard of review from the Court's review of administrative benefit determinations. If an administrator made a decision that seriously breaches its duties to the beneficiary, this breach prompts more searching review of the denial-of-benefits claim. See Waldoch v. Medtronic, Inc., 757 F.3d 822, 830 (8th Cir. 2014) (explaining that a "serious breach of the plan trustee's fiduciary duty to the plan beneficiary" will either "alter the standard of review or affect [the court's] review under the abuse-of-discretion standard.").

Plan so that Dapron cannot have a viable claim for breach of fiduciary duty; (2) a fiduciary does not have a duty to provide individualized advise to a plan participant; and (3) any breach of fiduciary duty claim arising from the events allegedly occurring in 2010 are barred by the applicable limitations period.

In his Reply, Dapron maintains that the Court is not limited to the terms of the plan documents when determining who owes a participant a fiduciary duty, but the Court must look at individual actions. Dapron argues that his breach of fiduciary duty claim is viable because Defendants employed a flawed claims process contrary to its fiduciary obligation to carry out its duty solely for participants by disregarding information showing Dapron was disabled prior to his resignation, and by refusing to consider Dapron's medical records in review of his claim and the Social Security Administration's determination of disability. Dapron asserts that Spire acted in a plan fiduciary capacity because Gery Gorla, the Vice President of Human Resources, decided Dapron's administrative appeal as an officer of Spire, not as a fiduciary of the Plan.

In their Sur-Reply, Defendants submitted documents explaining that the Plan Administrator delegated to Mr. Gorla the responsibility and discretion for deciding all appeals from adverse benefit determinations, and that Mr. Gorla serving in that capacity as a plan fiduciary, not as a corporate officer, made his determination regarding Dapron's appeal.

### III. Legal Standards

In ERISA cases, the general rule is that review is limited to evidence that was before the administrator, LaSalle v. Mercantile Bancorporation, Inc. Long Term Disability Plan 498 F.3d 805, 811 (8th Cir. 2007), since Congress enacted ERISA to provide for the quick and inexpensive adjudication of benefit disputes. See Winterbauer v. Life Ins. Co. of N. Am., 2008 WL 4643942, at *3 (E.D. Mo. Oct. 20, 2008). "[A]dditional evidence gathering is ruled out on

deferential review, and discouraged on de novo review." Brown v. Seitz Foods, Inc. Disability Benefit Plan, 140 F.3d 1198, 1200 (8th Cir. 1998).

Nonetheless, a court may allow expanded discovery if the plaintiff shows good cause. Id.; see Menz v. Procter & Gamble Health Care Plan, 520 F.3d 865, 871 (8th Cir. 2008) ("[I]f a conflict of interest is not apparent from the record, the district court may permit discovery and supplementation of the record to establish these facts if the plaintiff makes a showing of good cause."). A plaintiff can show good cause by establishing that the administrative record is insufficient to establish a "palpable conflict of interest" or a "serious procedural irregularity." See Farley v. Ark. Blue Cross and Blue Shield, 147 F.3d 774, 776 n.4 (8th Cir. 1998). "A palpable conflict of interest or serious procedural irregularity will ordinarily be apparent on the face of the administrative record or will be stipulated to by the parties. Thus, the district court will only rarely need to permit discovery and supplementation of the record to establish these facts." Id. Even if a plaintiff can show a conflict of interest or serious procedural irregularity, that plaintiff is not necessarily entitled to discovery. See Jones v. ReliaStar Life Ins. Co., 615 F.3d 941, 945 (8th Cir. 2010) (upholding district court's denial of discovery where plan administrator admitted that there was a conflict of interest). A procedural irregularity is said to exist where the plan administrator, in the exercise of its power, acted dishonestly, from improper motive, or failed to use sound judgment in reaching its decision. Menz, 520 F.3d at 871.

Although discovery of information outside the administrative record is generally not allowed, this limitation "does not apply to claims involving ERISA plans when the claims are for equitable relief under § 1132(a)(3) or for equitable estoppel." Kostecki v. Prudential Ins. Co. of Am., 2014 WL 5094004, at *1 (E.D. Mo. Oct. 10, 2014). "This is so because these types of actions 'do not benefit from the administrative process.'" Id. (quoting Jensen v. Solvay Chems.,

7

Inc. 520 F.Supp.2d 1349, 1355 (D. Wyo. Oct. 18, 2007) ("Case law does not constrain discovery under ERISA § [1132](a)(3) actions.").

IV. **Discussion**

   A. **Conflict of Interest**

Dapron fails to set forth any arguments explaining why discovery is necessary to determine whether Defendants' relationship with the plan administrator constituted a conflict of interest. Dapron has not asserted any factual allegations in the Complaint or provided any evidence showing that Defendants attempted to influence the plan administrator's decision to deny his claim. Therefore, Dapron's assertion rests on mere speculation and fails to show good cause. See Westbrook v. Georgia-Pac Corp., 2006 WL 2772822, at *4 (E.D. Ark. Sept. 26, 2006) (internal quotation marks omitted) ("It is not enough to allege generally that a conflict of interest may exist or that the case may have procedural irregularities").

Even if the undersigned could infer a possible conflict of interest from the administrative record, Dapron has failed to argue why the existing record precludes him for properly pursuing his claim. The existence of a possible or actual conflict of interest does not automatically justify additional discovery. See Jones, 615 F.3d at 945 (noting that additional discovery is discouraged). Accordingly, Dapron has failed to show good cause justifying discovery of a purported conflict of interest.

   B. **Procedural Irregularities**

Dapron also fails to set forth any arguments showing why discovery is necessary into purported procedural irregularities. In the Complaint, Dapron alleges that the denial of benefits was the product of procedural irregularities in the review process, but Dapron has failed to assert

any facts that would demonstrate that any procedural irregularities occurred in this case, despite making that general assertion.

Procedural irregularities will not warrant a less-deferential standard of review absent a showing that such irregularities cause the court to have "serious doubt as to whether the result reached was the product of an arbitrary decision of the plan administrator's whim, or demonstrate that the actual decision was reached without reflection and judgment." Neumann v. AT & T Commc'n, Inc., 376 F.3d 773, 781-82 (8th Cir. 2004) (internal citations omitted). A court may infer an absence of reflection and judgment in cases "where the plan trustee does not inquire into the relevant circumstances at issue; where the trustee never offers a written decision, so that the applicant and the court cannot properly review the basis for the decision; or where procedural irregularities are so egregious that the court has a total lack of faith in the integrity of the decision making process." Buttram v. Cent. States, SE & SW Areas Health & Welfare Fund, 76 F.3d 896, 900 (8th Cir. 1996).

Dapron has failed to show good cause for discovery because Dapron has not established any basis for a finding that the Retirement Board, serving as the plan administrator, acted dishonestly, from improper motive, or failed to use sound judgment in reaching its decision. Menz, 520 F.3d at 871. Here, the Retirement Board sent a letter of explanation for denying Dapron's claim under the Plan, finding that his claim was untimely because he waited more than six years after voluntarily terminating his employment to file a claim for Disability Retirement benefits under the Plan. (Adm. Rec. at 412) The Retirement Board has provided an explanation for its decision that relates to the Plan terms. Accordingly,

the instant record reflects no procedural irregularities that rise to the level that this Court has a total lack of faith in the integrity of the decision making process.[5]

### C. <u>Breach of Fiduciary Duty</u>

Dapron also alleges that Defendants breached their fiduciary duty by failing "to provide the information necessary to ensure [Dapron] understood his rights despite his condition [disabling mental illness impairing his judgment]. This silence allowed [Dapron's] delusions to mislead him for years which prevented him from applying for the benefits he was owed until 2016." (Complaint, ECF No. at ¶¶ 47-48)

In the context of ERISA claims, additional evidence gathering beyond the administrative record is traditionally prohibited on deferential review, "to ensure expeditious review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators." Brown, 140 F.3d at 1200. But these principals do not apply to claims for breach of fiduciary duty. Dapron's breach of fiduciary claim, although alleged pursuant to ERISA statutes and in conjunction with a denial-of-benefits claim, is subject to a separate and distinct standard of review from the Court's review of administrative benefit determinations.

ERISA defines plan fiduciaries as follows:

> Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan….

---

[5] Even if Dapron could establish procedural irregularity, the full abuse of discretion standard still applies unless the irregularity was "so egregious that the court has a total lack of faith in the integrity of the decision making process." Buttram, 76 F.3d at 900. There was nothing so egregious.

29 U.S.C. § 1002(21)(A). Whether an entity qualifies for fiduciary status under ERISA is a question of fact. See, e.g., Anoka Ortho. Assocs., P.A. v. Lechner, 910 F.2d 514, 517 (8th Cir. 1990); Tussey v. ABB, Inc., 746 F.3d 327, 336 (8th Cir. 2014) (ERISA fiduciary cases are inevitably fact intensive.). The Eighth Circuit has opined that "[t]he term fiduciary is to be broadly construed" and "consistent with ERISA's policies and objectives." Olson v. E.F. Hutton & Co., 957 F.2d 622, 625 (8th Cir. 1992) (internal citation and quotation marks omitted).

The undersigned finds it would be premature to determine a defendant's fiduciary status at this early stage before the filing of any dispositive motions. See, e.g., In re Xcel Energy, Inc. Sec., Derivative & ERISA Litig., 312 F. Supp. 2d 1165, 1181 (D. Minn. 2004) ("[I]t would be premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings, because a determination of fiduciary status based on function is a mixed question of law and fact.") (internal citations and quotations omitted).

The Court's determination regarding fiduciary status under 29 U.S.C. § 1002(21)(A) requires consideration of facts not likely contained in the administrative record. Dapron has made a sufficient showing, at this stage, to allow discovery. Moreover, the Court's analysis regarding whether a fiduciary owed a duty to disclose relevant information to the plan participant, as alleged in the Complaint, also benefits from consideration of facts and circumstances likely outside of the administrative record. Because Dapron's breach of fiduciary claim requires consideration of facts falling outside of the administrative record, the Court will grant Dapron's motion for discovery to the extent it seeks an order expanding the scope of discovery beyond the administrative record only with regard to Dapron's breach of fiduciary claim.

The parties should confer with one another and attempt to agree, in light of this decision, on the additional discovery that is needed and on the appropriate scope of discovery. The undersigned will then hold a supplemental scheduling conference, and will resolve any disputes that may remain. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Harry Dapron's Motion for Discovery (ECF No. 16) is GRANTED IN PART and DENIED IN PART.

**IT IS FURTHER ORDERED** that the Court will hold a supplemental scheduling conference on Thursday, August 23, 2018, at 10:30 a.m. in the chambers of the undersigned. In advance of the conference, the parties must meet and confer and attempt to reach agreement on the scope of discovery, in light of these rulings, and on an amended schedule, if necessary, for the remainder of the case. The parties must file a joint proposed scheduling order no later than Thursday, August 16, 2018, setting out their proposed schedule and any disputes that remain. If disputes remain over the scope of discovery, the joint filing must set forth with specificity what discovery Dapron wants that Defendants oppose.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of July, 2018