UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HARRY DAPRON,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17 CV 2671 JMB |
| | ) | |
| SPIRE, INC. RETIREMENT PLANS | ) | |
| COMMITTEE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under § 502(a)(1)(B) of the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. §1132(a)(1)(B), for judicial review of a decision by the Defendant Spire,

Inc. Retirement Plans Committee's ("Committee") to deny Plaintiff Harry DaPron's ("DaPron")

claim for payment of disability pension benefits. Presently pending before the Court are the

parties' cross-motions for summary judgment (ECF Nos. 35 and 47). The motions are fully

briefed and ready for disposition. All matters are pending before the undersigned United States

Magistrate Judge with the consent of the parties, pursuant to 28 U.S.C. § 636(c). Based upon a

review of the file, record and proceedings herein, and for the reasons stated, the Court grants the

Committee's motion for summary judgment and denies DaPron's cross motion for summary

judgment.

In the First Amended Complaint ("FAC"), DaPron alleges a wrongful denial of disability

benefits claim under ERISA (Count I), arguing that the Committee wrongfully denied him

---

[1] Although the parties in the caption of their cross motions for summary judgment list
Plaintiff's name as "Henry DaPron," this appears to be a typographical error because the caption
of the complaint and the amended complaints lists his name as "Harry DaPron." Thus, the Court
refers to Plaintiff as "Harry DaPron" as he identified himself in the complaint and the amended
complaint. (ECF Nos. 1 and 32)

1

disability benefits because he did not "apply for Disability Retirement benefits in connection with [his] termination."  (ECF No. 32, FAC at ¶ 35)  DaPron also alleges a breach of fiduciary duty claim stemming from when the Committee adjudicated his claim for benefits in 2016.  (Count II).  (Id. at ¶ 50)  In particular, DaPron alleges that his employer was aware that his mental condition impaired his judgment, insight and capacity, and prevented him from applying for benefits until 2016.  (Id. at¶ ¶ 47-48)  DaPron further alleges that the Committee breached its fiduciary duty by refusing "to consider the medical evidence documenting his incapacity to apply for benefits at the time of his separation from his employment; not investigating whether the plan administrator received notice of his disability and his incapacity to apply for benefits at the time of his separation from his employment; and using an unfair and biased process designed to create evidence to support a denial of benefits."  (Id. at ¶ 50(a)-(c))  DaPron seeks an order of remand with instructions for the Committee to conduct a full and fair review and an award of attorney's fees and costs.

Fundamental to this Court's function in reviewing the decision of the plan administrator regarding a claim for benefits is the necessity that the Court has a full and complete administrative record.  Gentile v. John Hancock Mut. Life Ins. Co., 951 F.Supp. 284, 287 (D.Mass. 1997).  DaPron attached two letters, one dated January 27, 2017, and the other dated February 9, 2017 (ECF No. 48-1), as evidence in support of his assertion that the full and complete administrative record has not been filed with the Court.  However, to the extent that DaPron presents evidence that was not raised prior to the conclusion of the administrative claims process and the close of the administrative record on January 19, 2017, these letters may not be considered because the Court can consider only the evidence that was before the administrator when the claim was denied.  See Brown v. Seitz Foods, Inc. Disability Benefit Plan, 140 F.3d

1198, 1200 (8th Cir. 1998) ("Such additional evidence gathering is ruled out on deferential review, and discouraged on *de novo* review to ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators.") (internal quotations omitted); Sandoval v. Aetna Life and Cas. Ins. Co., 967 F.2d 377, 381 (10th Cir. 1992) ("In effect, a curtain falls when the fiduciary completes its review, and for purposes of determining if there is substantial evidence supported the decision, the district court must evaluate the record as it was at the time of the decision."). Accordingly, the undersigned finds that the full and complete Administrative Record has been filed with the Court, and DaPron's assertion denying otherwise is not supported by the record.

I.  **Factual Background**

The facts are taken from the Committee's Statement of Uncontroverted Facts (ECF No. 37) and DaPron's Statement of Uncontroverted Material Facts (ECF No. 49). The Committee filed its Response to Plaintiff's Statement of Uncontroverted Material Facts (ECF No. 51); however, DaPron filed a Response to only five of the eighteen paragraphs of the Committee's Statements of Uncontroverted Facts. See ¶¶ 1, 11, 12, 13, and 14.[2] Local Rule 4.01(E) provides with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all the disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the

---

[2] As discussed above, DaPron's factual allegation in ¶ 1 is not supported by the record and is ineffective for purposes of establishing a genuine factual dispute.

movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E) ("Local Rule 4.01(E).  As a result of DaPron's failure to submit responses to ¶¶ 2, 3, 4, 5, 6, 7, 8, 9, 10, 15, 16, 17, and 18, DaPron has not met the requirements of Local Rule 4.01(E), and is deemed to have admitted the facts set forth in those paragraphs in the Committee's statements of uncontroverted facts.  Turner v. Shinseki, 2010 WL 2555114, at *2 (E.D.Mo. June 22, 2010)(citing Deichmann v. Boeing Co., 36 F.Supp.2d 1166, 1168 (E.D.Mo. 1999), aff'd 232 F.3d 907 (8th Cir.  2000), cert. denied, 531 U.S. 877.

Moreover, DaPron failed to cite to specific portions of the record to support his objections to ¶¶ 11, 12, 13, and 14 of the Committee's statement of uncontroverted facts. (ECF No. 48 at 1-2)  In support of his objections, DaPron asserts that "the citation to particular parts of materials in the record do not support this contention."  (ECF No. 48 at 2)  "Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies.  The opposing party shall also note for all disputed facts the paragraph number from movant's listing of facts.  All matters set forth in the statement shall be deemed admitted for the purposes unless specifically controverted by the opposing party."  Local Rule 4.01(E).  These objections DaPron has raised that do not cite to the record and are ineffective for purposes of establishing a genuine factual dispute.  Accordingly, for purposes of the Committee's motion for summary judgment, DaPron is deemed to have admitted the facts set forth in those paragraphs in the Committee's statements of uncontroverted facts.  See Roe v. St. Louis Univ., 746 F.3d 881, (8th Cir. 2014) (If the opposing party does not raise objections to a movant's statement of facts as required by Local Rule 4.01(E), " a district

court will not abuse its discretion by admitting the movant's facts."); Ridpath v. Pederson, 407 F.3d 934, 936 (8th Cir. 2005) (where plaintiff did not controvert defendant's statement of material fact, it was deemed admitted under Local Rule 4.01(E)).

With this in mind, the Court accepts the following facts as true for purposes of resolving the cross motions for summary judgment. In March 2010, DaPron was a participant in the Laclede Gas Company Employees' Retirement Plan ("Plan"). (FAC at ¶¶ 1,32-33 (ECF No. 32)) DaPron voluntarily resigned from his employment on March 2, 2010. (Id. at ¶ 13; Answer to First Amended Complaint at ¶ 13 (ECF No. 34))

The Plan includes the following disability section:

### ARTICLE VII – DISABILITY

7.1 **Disability Date.** Any Participant who, at a time when he is employed in Covered Employment, has fifteen or more Years of Credited Service and has then attained the age forty but not age sixty-five, and in the judgment of the Retirement Board, based on competent medical evidence, is unable by reason of any medically determinable physical or mental impairment to perform the duties required by his job, shall be deemed Totally and Permanently Disabled ("Disability") if there is no work that he is able to perform available to him within the Company.

Such Participant may be retired by the Retirement Board not less than thirty days and not more than ninety days following written application therefore filed with the Retirement Board by such Participant, or in the event such Participant is unable to make such application, then by a member of such Participant's immediate family or his legal representative.

(AR 27 (2009 Restatement) and AR 167 (2014 Restatement)) [3]

Under the Plan, Section 16.3 of the Plan delineates how to file a claim for benefits:

---

[3] The administrative record created during the claims process is referenced as "AR-" (ECF Nos. 14 and 15). The Committee cites both the 2009 Plan document that was in effect when DaPron resigned in March 2010 and the Plan document in effect when the Committee denied his claim and noted that the controlling provisions of the Plan did not change.

16.3 **Filing Claim for Benefits.** An Employee or Beneficiary, or the Company acting in his behalf, shall notify the Retirement Board in writing of a claim for benefits under the Plan. Such request shall be in any form acceptable to the Retirement Board, shall set forth the basis of such claim, and shall authorize the Retirement Board to conduct such examinations as may be necessary to determine the validity of the claim. The Retirement Board will take steps necessary to facilitate the payment of any benefits to which the Employee or Beneficiary may be entitled.

(AR 61 (2009 Restatement) and AR 200 (2014 Restatement))

The Plan provides in Section 7.7, **Review of Claim Denial by Retirement Board,** the process for reviewing of a decision: "If a review of a decision is requested, such review shall be made by the Retirement Board, which shall review all comments, documents, records, and other information submitted by the claimant relating to the disability claim, without regard to whether such information was submitted or considered in the initial benefit determination." (AR 30)

Under the Plan, to file an appeal from the decision of the Retirement Board concerning disability, the following must take place:

**7.8 Appeals from Decisions of Retirement Board Concerning Disability.**

(a)       In the event any Participant shall object to a decision of the Retirement Board involving a determination of whether the Participant is Totally Disabled so as to be eligible for Retirement under the Article, such appeal shall be submitted to a Medical Appeals Board consisting of one medical doctor selected by the Participant or, if the Participant is a Contract Employee, selected by his duly elected bargaining representative, and one medical doctor selected by the Company. The expense for the Medical Appeals Board shall be borne by the parties as outlined in subsection (b), below. If the two doctors so selected shall be in disagreement with respect to such Participant's disability, a third medical doctor selected by the Dean of the School of Medicine of Washington University, St. Louis, Missouri, shall be appointed as a third member of such Medical Appeals Board. The Participant involved shall be required  to provide all medical records requested by the respective doctors and submit to examinations requested by members of such Medical Appeals Board, which Board shall thereafter submit its report in writing to the Retirement Board. A decision on the question of disability, concurred in by a majority of said Medical Appeals Board, shall be final and binding on both the Retirement Board and the Participant or his duly elected bargaining representative.

(AR 31 (2009 Restatement) and AR 171 (2014 Restatement))

With respect to the standard of review, § 16.7 provides in relevant part:

In particular, the interpretation of all Plan provisions, and the determination of whether a Participant or Beneficiary is entitled to any benefit pursuant to the terms of the Plan, shall be exercised by the Retirement Board in its sole discretion. Any construction of the terms of the Plan for which there is a rational basis that is adopted by the Retirement Board shall be final and legally binding on all parties.

(AR 62-63 (2009 Restatement) and 201-02 (2014 Restatement))

The 2010 Summary Plan Description ("SPD")[4] outlined the retirement process as

follows:

## RETIREMENT PROCEDURE

You must apply for retirement by submitting a written statement to the Retirement Board of your intention to retire and the date chosen; and apply at least 30 days and no more than 90 days before your intended retirement date. Employee Benefits will provide a form suitable for this if you request it. Retirement dates are limited to the first day of a month.

For Disability Retirement, you must also submit competent medical evidence of total and permanent disability with your application. Totally and Permanently Disabled is defined in the Plan. If you are unable to apply for yourself, a member of your immediate family or your legal representative may make the application.

The Retirement Board determines eligibility, and if you are eligible you will be retired on the first day of a month, not less than 30 days and not more than 90 days after you apply.

(AR 118)

---

[4] Summary Plan Descriptions are considered part of the ERISA plan documents. 29 U.S.C. § 1102(a)(1); Jensen v. SIPCO, Inc., 38 F.3d 945, 949 (8th Cir. 1994). "A [summary plan description] is intended to be a document easily interpreted by a layman; an employee should not be required to adopt the skills of a lawyer and parse specific undefined words throughout the entire document to determine whether they are consistently used in the same context." Chiles v. Ceridian Corp. 95 F.3d 1505, 1517-18 (10th Cir. 1996); Cigna Corp. v. Amara CIGNA Corp., 563 U.S. 421, 436 (2011).

In the Delegation of Authority, effective May 24, 2016, the Committee delegated to Gery Gorla ("Gorla"), the Vice President, Human Resources, responsibility for and discretion to decide administrative appeals. (ECF No. 25-2)

In May 2016, DaPron first submitted an application for disability pension benefits under the Plan along with a copy of a February 20, 2010, letter confirming a finding of disability and an award of Social Security Disability Benefits. (AR 410-11) Although the Committee met on May 24, 2016, and DaPron's claim was on the agenda, his claim was not discussed at the meeting. (Id. at 401-04) The Committee voted unanimously to deny DaPron's claim for disability pension benefits. (Mark Mispagel Depo. at 16, 28 (ECF No. 41-3)) In his deposition, Mispagel testified that the Committee understood the Plan required that a disability pension application be made by an employee prior to his employment being terminated, and he is not aware of any exceptions to this requirement. (Id. at 28-29) Mispagel testified that the Committee interpreted the Plan to require an employee to file an application for disability pension benefits prior to his separation from employment because if not, the employee would not be considered eligible for such benefits. (Id. at 41) Mispagel opined that he was not aware of the Plan being administered any differently and that there was no attempt to determine whether DaPron was disabled at the time he separated from his employment. (Id. at 41-42) Mispagel further explained that the reason DaPron's claim was denied as follows: "In looking at the claim application, … it was done six years after the separation of the employee … on a voluntary resignation. And the committee looked at the plan documents and, in general, the -- or, in specific, the plan document indicates that an employee or a – actually, it says a covered employee or one of their legal representative or their family members will make application prior to a – separating from employment." (Id. at 28)

In a letter dated June 20, 2016, Gorla explained how the Committee had reviewed

DaPron's claim for disability pension benefits under the Plan and denied his application for

disability pension benefits as follows:

> The [Committee] has reviewed your claim for Disability Retirement benefits under the Laclede Gas Company Employees' Retirement Plan ("Plan"). The Plan requires that in order for an employee to be eligible for Disability Retirement benefits, the employee must terminate due to becoming totally and permanently disabled. The Plan Administrator must determine that the employee is totally and permanently disabled. This analysis is done after an employee (or the employee's family/legal representative) submits a written application to the Plan Administrator. If the Plan Administrator finds that the employee is totally and permanently disabled, the employee will be considered retired. Accordingly, the application for Disability Retirement must be made before/in connection with the employee terminating employment. The Committee has determined that an employee who does not apply for Disability Retirement benefits in connection with the employee's termination is not eligible for Disability Retirement benefits. You employment with Laclede Gas Company terminated on or about March 2, 2010, and your application for Disability Retirement benefits did not occur until on or about May 16, 2016. You did not apply for Disability Retirement benefits in connection with your termination. Therefore, your claim for Disability Retirement benefits is hereby denied.

> In the event you wish to appeal this decision with respect to the question of whether you [are] eligible for Disability Retirement benefits, such appeal shall be submitted in writing to the Committee by you or your duly authorized representative within 180 days after receipt of this denial. In your appeal you may request to review records and other information in the possession of the Committee which are relevant to this claim. You may also submit written comments, documents, records and other information relating to the claim.

> The Committee shall review any additional information provided in any such appeal without regard to whether such information was submitted or considered in the initial benefit determination. The Committee's review shall not afford deference to the initial adverse benefit determination. Any individual conducting the decision on review shall not be one of the individuals who made the initial adverse decision, nor the subordinates of such individuals.

> The decision on review shall be furnished in writing within forty-five days after the receipt by the Committee of the request for review, unless an extension is determined to be necessary by the Committee. If the decision of the Committee is a denial of benefits and you object to the decision of such appeal, you may file an additional appeal in accordance with Section 7.8 of the Plan. Finally, you have

the right to bring a civil action under Section 502(a) of ERISA following a denial
of an appeal.

If there is no appeal within the 180-day period mentioned above, the Committee's
decision will be final and binding.

(AR 412)

In a letter dated July 25, 2016, DaPron's counsel requested "[a] copy of any and all

summary plan descriptions, policies, certificates of insurance and other plan documents relating

to your policy with Laclede Gas Company" and other documents.  (AR 415-16)  On August 9,

2016, Judith Garner enclosed a copy of the Summary Plan Description for the Voluntary Long

Term Disability Plan that DaPron was a participant in during his employment.  (AR 418)  On

August 11, 2016, Courtney Vomund, associate general counsel, enclosed a copy of the Plan and

explained that "[d]ue to the fact that the denial was on procedural grounds under the terms of the

Plan, there is no documentation from medical providers related to the denial of the claim."  (AR

454-55)

On December 7, 2016, DaPron, through his counsel, appealed this determination by filing

an administrative appeal by submitting an eight-page appeal letter outlining the medical evidence

supporting DaPron's disability at the time of his termination in 2010.  (AR 456-63)  DaPron's

counsel also submitted over one thousand pages of DaPron's medical treatment records and

Social Security Administration ("SSA") records.  (AR 468-155)  Neither the Committee nor

Gorla reviewed the medical or SSA records submitted with DaPron's appeal letter but Gorla

reviewed the correspondence that had been exchanged and the appeal letter.  (AR 464-65; Gorla

Aff. ¶ 2)[5]  Further, Gorla averred that he has "never known of a former employee being allowed

---

[5] Counsel attached Gorla's affidavit to an email sent to the Court outlining their discovery
dispute regarding producing another corporate designee for deposition.

to file a claim for a Disability Pension a month, much less six years, after terminating his employment." (Gorla Aff. ¶ 4)

Gorla provided an official denial letter of DaPron's appeal on January 19, 2017, and affirmed the Committee's interpretation of the Plan requiring that an application must be filed with the Plan Administrator at or around the time the participant terminates employment and therefore finding that DaPron's claim was untimely. (AR 464-65; Gorla Aff. ¶ 5) Gorla explained DaPron's appeal was denied as follows:

> The Plan Administrator interprets the foregoing Plan provisions to require that an application for disability retirement be filed with the Plan Administrator at or around the time the Participant terminates employment. This is necessary because this is the only way the Retirement Board may determine that (a) the participant is unable to perform the duties required by his job at the time of termination; and (b) there is no work available in the Company that the participant is able to perform at the time of termination.

> Mr. DaPron's employment with Laclede Gas Company terminated on or about March 2, 2010, and his application for disability retirement benefits did not occur until on or about May 16, 2016. Nearly six years after Mr. DaPron's termination date, it is not possible for the Retirement Board to evaluate Mr. DaPron's ability to perform the duties required by his job at the time he terminated, or to determine whether there was alternative work available at that time. Therefore, Mr. DaPron's appeal of the Retirement Board's denial of disability retirement benefits is hereby denied.

(AR 464) The letter also informed DaPron of his rights under ERISA, including his right to bring a civil action. (Id.)

In a letter dated January 27, 2017,[6] DaPron's counsel requested "[p]ursuant to 29 C.F.R. § 2560.503-1(h)(2)(iii), please provide copies of all documents, records and other information relevant to Mr. DaPron's claim…." (ECF No. 49, Exh. 1)

---

[6] As discussed in footnote 2, this letter may not be considered because the Court can consider only the evidence that was before the administrator when the claim was denied so the Court will not consider this evidence. See Brown, 140 F.3d at 1200.

On November 1, 2017, DaPron filed the instant lawsuit, asserting a claim under ERISA § 501(a)(1)(B) claiming that he is entitled to the benefits under the Plan (Count I) and named Spire, Missouri Inc. f/k/a Laclede Gas Company and Laclede Gas Company Employees' Retirement Plan as defendants. (ECF No. 1) In Count II, DaPron asserts a claim under ERISA § 502(a)(3), arguing that the Committee breached a fiduciary duty by not considering his particular circumstances when interpreting the Plan. In the FAC, DaPron named as the sole defendant the Committee. (ECF No. 32)

## II.   **Motions for Summary Judgment and Responsive Briefs Thereto**

In its motion for summary judgment (ECF No. 35), the Committee contends that the material facts establish: (1) that the Committee reasonably interpreted the Plan to bar a claim for a disability pension benefits filed more than six years after separation from employment and such determination was not arbitrary and capricious or an abuse of discretion[7] and (2) that by enforcing the terms of the Plan without giving consideration to DaPron's medical condition in 2010, the Committee did not breach a fiduciary duty.

In his cross motion for summary judgment (ECF No. 47), DaPron claims that the Committee failed to provide a full and fair review as required by ERISA (1) by refusing to consider any of DaPron's medical records evidencing that he was disabled at the time of his termination; (2) by failing to provide a copy of the Delegation of Authority delegating Gorla the responsibility for deciding administrative appeals; and (3) by not reviewing the documents

---

[7] The Eighth Circuit has found that the abuse of discretion standard and the arbitrary and capricious standard are synonyms and can be used interchangeably. <u>Jackson v. Prudential Ins, Co, of Am.</u>, 530 F.3d 696, 701 n.6 (8th Cir. 2008).

DaPron submitted on appeal.[8]  DaPron also contends that the Committee's interpretation of the

Plan is inconsistent with the plain language of the Plan.[9]  As a result of the foregoing, DaPron

---

[8] Notably, DaPron's claim regarding the Committee's failure to provide him with an opportunity for a full and fair administrative review as required by 29 U.S.C. § 1133, presented in his summary judgment motion is not asserted or alluded to in his FAC, and he did not seek to amend his complaint to add this claim.  Likewise, this new claim is not supported by any factual allegations in the FAC.  See, e.g., Gregory v. Dillard's Inc., 565 F.3d 464, 473 (8th Cir. 2009) (citations omitted) (the court "is not required to divine the litigant's intent and create claims that are not clearly raised, … and it need not conjure up unpled allegations to save a complaint.").  Complaints are required to allege facts which, if true, state a claim for relief as a matter of law.  See Stone v. Harry, 364 F.3d 912, 914-15 (8th Cir. 2004) (federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint.").  The Eighth Circuit has held that parties cannot "manufacture claims, which were not pled, late in the litigation for the purpose of avoiding summary judgment."  N. States Power Co. v. Fed. Transit Admin., 358 F.3d 1050, 1057 (8th Cir. 2004); see, e.g., Clemons v. City of Minneapolis, 2007 WL 1202331 at * 6, n.16 (D.Minn. 2007) (First Amendment claim that "is nowhere mentioned" in plaintiff's complaint would not be considered on summary judgment).  DaPron cannot late into the litigation of this matter, assert unpled allegations in an effort to avoid summary judgment.  See, e.g., Rodgers v. City of Des Moines, 435 F.3d 904, 910 (8th Cir. 2006) (holding that the district court properly refused to consider unpled allegations on a motion for summary judgment raised in opposition to a motion for summary judgment.).   If a party cannot raise a new, previously unpled, claim in opposition to another party's summary judgment motion, then a party should not be able to seek summary judgment for himself on a new claim that has not been pled in his complaint.  See Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1314 (11th Cir. 2004) ("liberal pleading standard for civil complaints … does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage."); Spectra Merch. Int'l, Inc. v. Euler ACI Collection Servs. Inc., 2004 WL 1393600, at *6 n.4 (N.D. Ill. June 18, 2004)("Just as a plaintiff cannot amend his complaint through arguments in his brief in opposition to a motion for summary judgment, the plaintiff cannot use a brief to present new allegations or particulars of fraud not contained in the complaint.") (citations omitted).  Because this claim of failure to provide a full and fair administrative review advanced in DaPron's summary judgment motion has not been pled in his FAC, DaPron's motion as to this claim for failure to provide him with an opportunity for a full and fair administrative review will denied.

[9] Although asserted as Count II of the FAC, DaPron does not argue this alleged breach of duty in his motion for summary judgment.  If a party fails to oppose a basis for summary judgment, then that constitutes waiver of argument.  See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trustees, 558 F.3d 731, 735 (8th Cir. 2009).  Although DaPron did not specifically address this argument, the Committee had adequate notice because this issue of whether the Committee breached a fiduciary duty was properly raised in the complaint and the FAC.

requests to have the case remanded to the Committee with instructions to conduct a full and fair review.

In Reply (ECF No. 50), the Committee asserts that the issue is whether the Committee's interpretation of the Plan to bar a claim for disability pension filed six years after the employee separated his employment was arbitrary and capricious, not whether DaPron was qualified for a disability pension under the terms of the Plan. The Committee argues that "[t]his case does not present the question whether Plaintiff qualified for a Disability Pension under the terms of the Plan. This later question never became ripe for determination because the Committee first determined that Plaintiff had not submitted a timely claim for a Disability Pension." (ECF No. 50 at 1)

In his Reply (ECF No. 53), DaPron reasserts that the Committee failed to provide a full and fair review by refusing to consider any of his medical evidence showing that he was disabled at the time of his separation from employment. DaPron argues that the Committee's "failure to provide a full and fair review, by refusing to take into account the documents relating to his claim, is an abuse of discretion and constitutes a serious breach of duty." (ECF No. 53 at 4)

## III.  **Legal Standards**

### A.  Summary Judgment Standard

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotx Corp. v. Cattrett, 477 U.S. 317, 322-23 (1984). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on

that issue.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).  In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party.  <u>Osborn v. E.F. Hutton & Co., Inc.</u>, 853 F.2d 616, 619 (8th Cir. 1988).

When cross motions for summary judgment are filed, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law.  <u>Husinga v. Federal-Mogul Ignition Co.</u>, 519 F.Supp.2d 929, 942 (S.D.Iowa 2007).  "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits."  <u>Wermager v. Cormorant Township Bd.</u>, 716 F.2d 1211, 1214 (8th Cir. 1983).  "The usual Rule 56 standard applies to cross-motions for summary judgment."  <u>Int'l Brotherhood of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.</u>, 293 F.3d 402, 404 (7th Cir. 2002).  In determining the appropriateness of summary judgment, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  <u>Bingaman v. Kansas City Power & Light Co.</u>, 1 F.3d 976, 980 (10th Cir. 1993) (quoting <u>Anderson</u>, 477 U.S. at 251-52)).

**B.  Scope of Review**

Under ERISA, when a denial of benefits is challenged through judicial review, "the record that was before the administrator furnishes the primary basis for review."  <u>Trustees of Electrician's Salary Deferral Plan v. Wright</u>,  688 F.3d 922, 925 (8th Cir. 2012); <u>see</u> <u>also</u> <u>Brown v. Seitz Foods, Inc. v. Disability Benefits Plan</u>, 140 F.3dc 1198, 1200 (8th Cir. 1998) (suggesting a district court should ordinarily limit its review to the evidence contained in the administrative

record).  When reviewing the denial of benefits under an ERISA plan, "the general rule is that review is limited to evidence that was before the administrator."  Atkins v. Prudential Ins. Co., 404 Fed.Appx. 82, 84 (8th Cir. 2010) (internal quotation marks omitted).  The review of a benefits decision is generally confined to the information available at the time of the claim decision.  Farlay v. Arkansas Blue Cross & Blue Shield, 147 F.3d 774, 777 (8th Cir. 1996). However, new evidence may be considered under certain circumstances in order to enable the full exercise of informed and independent judgment.  Kostecki v. Prudential Ins. Co. of Am., 2014 WL 5094004, at *1 (E.D.Mo. Oct. 10, 2014).

### C.  ERISA Standard of Review

Under ERISA, a plan participant or beneficiary may bring a civil action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. 1132(a)(1)(B).

In their cross motions for summary judgment, the parties do not dispute the standard of review that the Court should apply in reviewing DaPron's denial of disability benefits.[10]  "Under ERISA, the standard of review of a denial of benefits claim turns on whether the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Wade v. Aetna Life Ins. Co., 2011 WL 4369423, at *13 (E.D.Mo. Sept. 19, 2011), aff'd 684 F.3d 1360 (8th Cir. 2012) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).  Where the plan administrator has such discretionary authority, judicial review is limited to an abuse of discretion standard.  Id.  When reviewing for abuse of discretion, the Court will uphold the administrator's decision if it is reasonable,

---

[10] In the FAC, DaPron alleges that the Committee's "decision to deny benefits was arbitrary and capricious, an abuse of discretion, and not based on substantial evidence."  (ECF No. 32 at ¶ 42)

meaning it is supported by substantial evidence.  See Green v. Union Sec. Ins. Co., 646 F.3d 1042, 1050 (8th Cir. 2011).

Here, the Plan explicitly provides that "the interpretation of all Plan provisions, and the determination of whether a Participant … is entitled to any benefit pursuant to the terms of the Plan, shall be exercised by the Retirement Board in its sole discretion."  (AR 62-63)  Based on this language, the Plan document clearly granted discretion to the Committee to interpret the Plan.

When reviewed for an abuse of discretion, "an administrator's decision is upheld if it is reasonable, that is, supported by substantial evidence … [which] means more than a scintilla but less than a preponderance."  Silva v. Metro Life Ins. Co., 762 F.3d 711, 717 (8th Cir. 2014) (internal quotations omitted).  The test for reasonableness ultimately depends upon the administrator's basis for denial.  Conley v. Pitney Bowes, 176 F.3d 1044, 1049 (8th Cir. 1999). Ultimately, "[t]he requirement that the plan  administrator's decision be reasonable should be read to mean that a decision is reasonable if a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision."  Green, 646 F.3d at 1050 (quoted case and internal quotation marks omitted).

## IV.   Discussion

### A.  The Committee Correctly Interpreted the Plan

The Court now turns to the ultimate issue in this case, whether the Committee abused its discretion when it denied DaPron's claim for disability pension benefits.  Applying the abuse of discretion standard, the Court finds that, based on the administrative record before the Committee, there was more than a scintilla of evidence supporting the Committee's decision to deny disability pension benefits.  The Committee's decision was supported by substantial

evidence, and "a reasonable person could have reached a similar decision." See Green, 646 F.3d at 1050.

The record shows that DaPron was a participant in the Plan, and that he voluntarily resigned from his employment on March 2, 2010. (Id. at ¶ 13; Answer to First Amended Complaint at ¶ 13 (ECF No. 34)) In May 2016, DaPron submitted an application for disability pension benefits under the Plan. (AR 410)

After interpreting the Plan to require that claims for disability pension benefits must be submitted in connection with the employee separating from employment, the Committee voted unanimously to deny DaPron's claim. (Mispagel Depo. At 16, 38-29) The Committee found that because DaPron submitted his claim more than six years after separating from his employment, his claim was untimely. (Id. at 28-29)

By letter dated June 20, 2016, Gorla explained how the Committee had reviewed DaPron's claim for disability pension benefits under the Plan and denied his application for disability pension benefits as follows:

> The Committee has determined that an employee who does not apply for Disability Retirement benefits in connection with the employee's termination is not eligible for Disability Retirement benefits. You employment with Laclede Gas Company terminated on or about March 2, 2010, and your application for Disability Retirement benefits did not occur until on or about May 16, 2016. You did not apply for Disability Retirement benefits in connection with your termination. Therefore, your claim for Disability Retirement benefits is hereby denied.

(AR 412) Because the Committee found that DaPron did not submit a timely claim for disability pension, the Committee did not assess whether DaPron had been disabled in 2010 or whether he would have qualified for a disability pension had he submitted a claim for a disability pension in connection with his termination employment in March 2010. (Mispagel Depo. at 30, 40-41)

18

On December 7, 2016, DaPron filed an administrative appeal, arguing that because his mental illness precluded him from filing for disability pension benefits in March 2010 when he resigned, he should be permitted to file his claim for disability pension.  (AR 456-63)  Gorla affirmed the Committee's interpretation of the Plan and their determination that DaPron's claim was in untimely.  Gorla explained why DaPron's appeal was denied as follows:  "The Plan Administrator interprets the … Plan provisions to require that an application for disability retirement be filed with the Plan Administrator at or around the time the Participant terminates employment….  Mr. DaPron's employment with Laclede Gas Company terminated on or about March 2, 2010, and his application for disability retirement benefits did not occur until on or about May 16, 2016[,] [n]early six years after Mr. DaPron's termination date[.]". … Therefore, Mr. DaPron's appeal of the Retirement Board's denial of disability retirement benefits is hereby denied."  (AR 464)

In support of its Motion, the Committee argues that there was no abuse of discretion in the denial of DaPron's disability pension benefits as the Plan does not allow a claim to be filed more than six years after the participant's separation from employment.  First, Section 7.1 defining disability date clearly does not allow a former employee to qualify for benefits.  The section specifically requires that the claimant "is employed" and "is unable" to work.  The section is written in the present tense further evidencing that the Plan allows only persons still employed to file a claim for a disability pension.  Likewise, the section requires that in order for a person to qualify for benefits, there must be evidence that "there is no work that he is able to perform available to him within the Company."  (AR 27)  Finally, Section 7.1 requires that the

claimant be in "Covered Employment."[11]  The Committee contends that inasmuch as DaPron voluntarily resigned in March 2010, he was not a "Covered Employee" in 2016.

Likewise, the SPD clearly delineates a specific time frame for the filing of a claim by requiring an employee to give at least thirty days' notice of his intent to retire and by precluding giving notice more than ninety days in advance of his retirement.  Moreover, the employee must also submit competent medical evidence of his total and permanent disability.  (AR 118)

Next, the Committee cites to Section 16.3 as precluding a former employee from filing a claim but requiring that the person be an "Employee" when he submits his claim in writing.  See Section 16.3 ("An Employee or Beneficiary, or the Company acting in his behalf, shall notify the Retirement Board in writing of a claim for benefits under the Plan.").  (AR 61)

In sum, the Court finds and concludes that the Committee acted within the written terms of the Plan in denying DaPron's disability pension benefits, and the Committee's interpretation of the Plan was reasonable.  As set forth above, the Plan clearly requires that the claimant "is employed" in order for a person to qualify for benefits.  DaPron was not employed and had not been employed for six years when he filed for his claim for disability pension benefits.  Moreover, the Committee's interpretation of the Plan does not render any plan language internally inconsistent.  The Plan interpretation has been consistently applied as supported by Mispagel's testimony that that the Committee interpreted the Plan to require an employee to file an application for disability pension benefits prior to his separation from employment because if not, the employee would not be considered eligible for disability pension benefits.  (Mispagel Depo. at 41-42)  The Court finds that the Committee appropriately and reasonably denied DaPron's claim for disability pension benefits as untimely.

---

[11] Section 1.13 defines "Covered Employment" to mean service by an employee while classified by the Company as an "Employee."  (AR 11)

## B. **The Committee Did Not Breach A Fiduciary Duty**

In Count II, DaPron asserts that the Committee breached a fiduciary duty in 2016 by refusing to take into account his medical documents showing that he was disabled at the time he separated from his employment in 2010. The Committee argues that it reasonably interpreted the Plan to bar a claim for disability pension benefits filed six years after separation from employment, and such determination was not arbitrary and capricious or an abuse of discretion.

The Committee's refusal to consider DaPron's medical records before denying him disability pension benefits does not establish a procedural irregularity sufficient to warrant a heightened level of scrutiny for a breach of fiduciary duty, because the Committee's denial was based on DaPron's failure to file his claim six years after his separation from employment. A procedural irregularity is said to exist where the plan administrator, in the exercise of its power, acted dishonestly, from improper motive, or failed to use sound judgment in reaching its decision. See Menz v. Procter & Gamble Health Care Plan, 520 F.3d 865, 871 (8th Cir. 2008). The contents of DaPron's medical records are simply not among the relevant circumstances at issue with respect to the Committee's denial. See, e.g., Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998) (stating that a claimant must establish that the procedural irregularity has "some connection to the substantive decision reached").

As previously determined by the Court, the Committee was not required to consider DaPron's extenuating circumstances when interpreting the Plan. "[DaPron's] personal circumstances and [Spire's] awareness of those circumstances cannot subvert the terms of the Plan or alter the proper interpretation of the Plan." (ECF No. 42 at 9) A fiduciary does not have a duty to individually notify participants of the impact of general terms of the plan upon the participant as a fiduciary cannot be expected to anticipate the individualized concerns of every

employee.  See cf. Maxa v. John Alden Life Ins. Co., 972 F.2d 980, 986 (8th Cir. 1992) (noting

that "fiduciaries should be able to rely upon the detailed and uniform guidance ERISA provides

with regard to the disclosure requirements rather than bearing the practically impossible burden

of anticipating, and comprehensively addressing, the individualized concerns of thousands of

employees…"); Harp v. Kaiser Foundation Health Plan, Inc., 133 F. Supp.3d 1248, 1260 (D. Or.

2015) ("Plaintiff cites no law … requiring a plan administrator to consider a claimant's

extenuating personal circumstances in determining whether a claim is covered by the plan.  The

issue is whether the plain language provides for reimbursement.  Sympathy and personal

hardship are not part of the analysis").  Accordingly, the Committee was not required to consider

DaPron's extenuating circumstances set forth in his medical records when interpreting the Plan.

 The Court concludes that the Committee's decision to deny DaPron disability pension

benefits because he failed to file for such benefits at the time of his separation from employment

as required by the Plan was supported by substantial evidence.  The record shows that no

employee has been allowed to wait for six years after separating from employment to file a claim

for a disability pension.  Likewise, Mispagel testified that no participant has been allowed to

submit a claim for a disability pension after terminating employment.  Based on the

administrative record, the Court finds that substantial evidence supports the Committee's

decision to deny DaPron disability pension benefits.

## V. Conclusion

 On its face, the result here may seem harsh.  The Court's "duty is to determine whether

[the Committee's] decision was supported by substantial evidence, not to weigh the evidence

anew."  See Green, 646 F.3d at 1053.  Based on the record as a whole, the Court concludes that

substantial evidence supports the Committee's to deny DaPron disability pension benefits and

that "a reasonable person could have reached a similar decision." <u>See</u> <u>id.</u> at 1050. Because the denial of disability pension benefits was not arbitrary and capricious, the Court will grant the Committee's motion for summary judgment on DaPron's ERISA claims and deny DaPron's motion for summary judgment. Accordingly,

**IT IS HEREBY ORDERED** that Defendant, Spire, Inc. Retirement Plans Committee's Motion for Summary Judgment on Plaintiff's First Amended Complaint (ECF No. 35) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiff Harry DaPron's Cross Motion for Summary Judgment (ECF No. 47) is DENIED.

**IT IS FURTHER ORDERED** that the June 24, 2019, trial date is vacated.

A separate Judgment in accordance with this Memorandum and Order is entered herewith.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 7th day of May, 2019